Robert C. **HARRIS**, Appellant,

v.

Dr. R. O. **SETTLE**, Warden, Medical Center for Federal Prisoners, Springfield, Missouri, Appellee.

No. 17328.

United States Court of Appeals
Eighth Circuit.

Oct. 3, 1963.

on foreign duty. He was originally confined in the federal prison at Atlanta but in July 1958, after certification under 18 U.S.C. § 4241, was transferred to the Medical Center for federal prisoners at Springfield, Missouri.

Harris' petition asserts a violation of the Eighth Amendment's guaranty against the infliction of cruel and unusual punishments. No question is raised, however, as to the legality of his conviction and detention or as to his assignment to the Medical Center. His complaint consists, instead, of allegations that as he was walking in a tunnel between two buildings at the Center, Knox, a white inmate, passed by, called him a bad name, and spat in his face; that Harris then struck Knox twice with his fist; that as a consequence Harris was placed first in solitary confinement and later in a modified restricted unit; that Knox was not punished; that "this one sided punishment is bias and prejudice and cruel"; and that Harris "can not attend the church of his worship," can shave only twice a week, and "is segregated from the main population". As an alternative remedy, he suggests prosecution against the prison authorities under 42 U.S.C. § 1987.

The district court's denial of the petition was proper and is affirmed. As the court said, "The petition * * * must be denied since it does not allege facts which, if true, would warrant the issuance of a writ of *habeas corpus* by this court to review the action of the respondent in disciplining petitioner". In Williams v. Steele, 194 F.2d 32, 34 (8 Cir. 1954), rehearing denied 8 Cir., 194 F.2d 917, cert. denied 344 U.S. 822, 73 S.Ct. 20, 97 L.Ed. 640, this court said:

> "Since the prison system of the United States is entrusted to the Bureau of Prisons under the direction of the Attorney General, 18 U.S.C.A. § 4042, supra, the courts have no power to supervise the discipline of the prisoners nor to interfere with their discipline, but only on *habeas corpus* to deliver from prison those who are illegally detained."

Robert C. Harris pro se.

F. Russell Millin, U. S. Atty., and John Harry Wiggins, Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before VAN OOSTERHOUT and BLACKMUN, Circuit Judges, and MEREDITH, District Judge.

PER CURIAM.

Robert C. Harris appeals in forma pauperis from the district court's denial without a hearing of his petition for a writ of habeas corpus.

Harris is a Negro. He is 47 years of age and is serving a 25-year sentence imposed in July 1950 by an army court martial after conviction of charges of murder, unlawful entry, and assault while

To the same general effect are Sutton v. Settle, 302 F.2d 286, 288 (8 Cir. 1962), cert. denied 372 U.S. 930, 83 S.Ct. 876, 9 L.Ed.2d 734; Morton v. Steele, 217 F. 2d 13 (8 Cir. 1954), cert. denied 348 U.S. 974, 75 S.Ct. 537, 99 L.Ed. 759; and Garcia v. Steele, 193 F.2d 276, 278 (8 Cir. 1951).

The Fourth Circuit has approached the issue with perhaps more elaboration. After indicating that it would not rely on the "niceties of the procedural rules" in considering petitions prepared by prisoners themselves, and treating the petitions as applications for injunctive relief, the court said:.

"Since management of the penal institutions has been placed by the Congress in the Executive Department, and the Executive Department is solely responsible for the security of the prisoners and of the officials and others working within the prison, they must be allowed to exercise a largely unfettered discretion in deciding what security measures are appropriate and, with respect to each prisoner, what relative freedom he safely may be allowed. If one is given greater freedom of movement than another, or if one becomes a trusty, while many do not, such routine matters of prison administration ought not to become the subject of judicial controversy. * * * So long as the punishment imposed for an infraction of the rules is not so unreasonable as to be characterized as vindictive, cruel or inhuman, there is no right of judicial review of it. * * *

"Such questions as these have consistently been held to be nonjusticiable, for routine security measures and disciplinary action rest solely in the discretion of the prison officials and their superiors in the Executive Department." Roberts v. Pegelow, 313 F.2d 548, 550–551 (4 Cir. 1963).

■ There may, of course, be a rare and exceptional situation where a court will undertake to review the nature and conditions of a prisoner's otherwise lawful confinement. See, for example, Ex parte Hull, 312 U.S. 546, 549, 61 S.Ct. 640, 85 L.Ed. 1034 (1941); Coffin v. Reichard, 143 F.2d 443, 445, 155 A.L.R. 143 (6 Cir. 1944); Miller v. Overholser, 92 U.S.App.D.C. 110, 206 F.2d 415, 419 (1953); Fulwood v. Clemmer, 111 U.S. App.D.C. 184, 295 F.2d 171 (1961).

■ The present case, however, presents no such exceptional situation. Despite Harris' conclusory allegations and despite the different treatment alleged to have been afforded the white prisoner Knox, there is nothing in the petitioner's asserted facts as to his confinement which, without more, is so unreasonable as to constitute cruel and unusual punishment within the prohibition of the Eighth Amendment. What Harris alleges falls instead within the area of discretionary prison discipline with which the courts will not interfere.

Affirmed.